PATRICIA E., Marianne F., on their own behalf and on behalf of Rachel F., a minor, Plaintiffs,

v.

BOARD OF EDUCATION OF COMMUNITY HIGH SCHOOL DISTRICT # 155, Defendant.

No. 94 C 1197.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 2, 1995.

Jordan M. Cramer, Chuhak & Tecson, Chicago, IL, Margie Best, Chicago, IL, David B. Wilson, Levin & Perconti, Chicago, IL, and Katherine M. Black, Carbondale, IL, for plaintiffs.

Wayne F. Plaza, Karen Wilson Howard, and Frederick Forrest Richards, III, Rooks, Pitts & Poust, Chicago, IL, for defendant.

*MEMORANDUM OPINION
AND ORDER*

HOLDERMAN, District Judge:

Plaintiffs Patricia E. and Marianne F., on their own behalf and on behalf of Rachel F., a minor ("plaintiffs"), filed this action against defendant Board of Education of Community High School District # 155 ("District") to recover attorneys' fees and costs as an alleged prevailing party pursuant to Section 1415(e) of the Individuals With Disabilities

**1162**

Education Act ("IDEA"), 20 U.S.C. § 1415(e), and the Illinois School Code ("School Code"), 105 ILCS 5/14–8.02. Presently before the court are both parties' cross-motions for summary judgment and defendant's motion to strike portions of plaintiffs' 12(m) Statement.[1] For the reasons stated below, defendant's motion to strike is granted, plaintiffs' motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

### BACKGROUND

The following facts are undisputed. Marianne F. is the mother of Rachel F., and Patricia E. is the aunt of Rachel F. Patricia E. resides in Cary, Illinois within School District #155. The District is a public school district created by statute to provide public education services to students within its boundaries in McHenry County. The IDEA and the Illinois School Code provide administrative procedures for resolving differences between school districts and parents over the educational services provided to students, including impartial due process hearings and a system for appeals.

In August of 1992, Rachel's psychiatrist, Dr. Vermuri, recommended a change in Rachel's living environment and asked Rachel's Aunt Patricia if Rachel could live with her. After making inquiries as to enrolling Rachel in District #155 schools, Patricia was appointed guardian of Rachel. Patricia registered Rachel as a student in the District at Cary–Grove High School on September 2, 1992. At that time Patricia requested a special reading class and/or English class for Rachel because Rachel had problems with reading in the past. Patricia also advised the school personnel that Rachel was attending an after-school counseling program called the "TAG Program."

By the end of September, Rachel started receiving school detentions due to behavior problems and seemed to be depressed. Patricia talked about Rachel's problems with the school social worker and the vice-principal. In October of 1992, Rachel was hospitalized at Woodstock Hospital in Woodstock, Illinois, for approximately one week because of depression and threats of suicide. The District provided Home/Hospitalization educational services pursuant to its obligations under the IDEA and Illinois School Code.

In October of 1992, Patricia expressed concerns to school personnel that Rachel was not enrolled in classes commensurate with her abilities. On October 30, 1992, shortly after Rachel's discharge from the hospital, Patricia met with school personnel to discuss Rachel's situation. At the meeting, the social worker told Patricia that Rachel had access to a gun and was planning on committing suicide immediately before the October 1992 hospital admission. The meeting was stopped at that point to allow Patricia to talk with Rachel's counselor at the TAG Program about the gun and the threat of suicide.

The parties met again on November 9, 1992. At that meeting Patricia was advised that Rachel needed further testing before the District could provide Rachel with specific special educational services. During this time Rachel returned to the District and was provided with educational services pending a determination of potential need for special education placement.

Due to an overdose, Rachel was again hospitalized on December 17, 1992. From De-

---

1. Defendant District has filed a motion to strike portions of plaintiffs' 12(m) Statement which defendant argues is not supported by the evidence cited. In addition, defendant has moved to strike portions of the affidavits of plaintiffs' attorneys Margie Best and Susan Enspar–Wayne. In an order dated January 31, 1995, the court granted plaintiffs until February 7, 1995 to file a response to defendant's motion to strike, but plaintiffs failed to respond. Therefore, the court will treat defendant's motion to strike as uncontroverted.

In any event, after reviewing the relevant portions of the 12(m) statement and the attorney affidavits, the court finds that defendant's motion to strike should be granted. The portions of ¶¶ 6, 7, 9, 10, 19, 26, 31, 32 and 34 which defendant has moved to strike are not supported by the evidence referred to in these paragraphs. In addition, ¶¶ 6, 7(a), 9, 10, 11 and Exhibit B of the affidavit of attorney Margie Best and ¶¶ 12 and 13 of the affidavit of attorney Susan Enspar–Wayne are not based on the personal knowledge of these parties and should therefore also be stricken for failing to conform with Rule 56(e) of the Federal Rules of Civil Procedure.

cember 19, 1992 to January 3, 1993, school was not in session and no educational services were required for Rachel. Because Rachel made threats to harm Patricia's child, Patricia and her husband decided that Rachel could not return to their home after the hospitalization period. On December 21, 1992, Rachel was transferred to the Henry Horner Psychiatric Center in Chicago, Illinois.

On January 6, 1993, while Rachel remained hospitalized, Patricia had a conference with District personnel to review Rachel's case and recommend placement. At the conference Patricia informed the District that Rachel had been transferred to the Henry Horner Psychiatric Center. Patricia also stated that she did not think Rachel could come back to Patricia's home upon release from Henry Horner because of the threats that Rachel made to harm Patricia's child. Patricia asked questions about residential treatment and was advised that a residential placement for educational purposes included a requirement that the placement be transitional and not permanent. The District then contacted the Henry Horner Center to discuss Rachel's situation and evaluate her records.

Soon after the meeting with the District, Patricia contacted an attorney to find out what educational services could be obtained for Rachel. On January 22, 1993, plaintiffs' attorney filed a request with the District for an impartial due process hearing under the IDEA. Rachel ran away from the Henry Horner Center on January 23, 1993. The District was first notified of this on January 27, 1993.

On February 10, 1993, Rachel was admitted at Hartgrove Hospital in Chicago, Illinois. On February 15, 1993, the District was notified that Rachel had been found and had been admitted to Hartgrove Hospital where she required 4–6 weeks of treatment. On February 24, 1993, District personnel consisting of the Director of Special Services, the District Psychologist and the District Social Worker visited Rachel as part of the educational evaluation process. On March 5, 1993, Patricia, along with her attorney and a representative from the District, attended a staffing Hartgrove Psychiatric Hospital to make a determination of appropriate special education services to be provided to Rachel. The meeting included discussions regarding the need to properly identify Rachel's difficulties and to prepare an individualized educational program ("IEP") for Rachel. Rachel was identified as behavior disordered and attention deficit disordered pending review of records not provided at that time but in possession of Rachel's mother, with further periodic review and evaluations. In addition, the parties discussed placement of Rachel in the Allendale Residential Facility in Lake Villa, Illinois, and Allendale was contacted.

On March 12, 1993, Allendale accepted Rachel and the District confirmed the placement. On March 19, 1993, Rachel was transferred to Allendale. On March 26, 1993, a staffing was held at Allendale to incorporate additional handwritten notes into the IEP developed on March 5, 1993. Both Rachel's mother and her Aunt Patricia chose not to attend this meeting. The March 26, 1993 IEP was signed by all in attendance. The substance of the March 26 staffing was discussed with Patricia by telephone immediately after the staffing. A final conference was scheduled for April 6, 1993. This meeting was canceled by the family's attorney. On April 29, 1993, the District reconvened for the purpose of reviewing the missing hospital records and revising the March 26, 1993 IEP to correspond to the Allendale program.

A Level I due process hearing, as requested by Patricia on January 22, 1993, was held on April 7, 1993. The issues presented included whether Rachel was a resident of District # 155 and whether District # 155 was adequately responding to Rachel's special educational needs as required by the IDEA. The hearing was continued in progress by the Hearing Officer because both parties represented to the Officer that they expected they would be able to resolve their dispute and arrive at a settlement.[2] Within the allotted time frame, the parties advised the Hearing Office that on April 29, 1993,

---

**2.** *See District's Motion for Summary Judgment,* Ex. F., Level I Decision and Final Order, at 1.

they had executed and agreed on an IEP for Rachel effectively resolving the dispute regarding Rachel's present placement and services.[3] Subsequently, Patricia's counsel asserted that there remained unresolved issues which required a ruling including 1) hospital educational and related services; 2) payment of independent evaluations; and 3) problems with records.[4]

The hearing was scheduled to resume on May 18, 1993, for the purposes of addressing the remaining alleged issues raised by Patricia. The parties agreed that rather than conduct an evidentiary hearing, relying on those materials already in the record, the parties would each submit written briefs arguing their respective positions on the alleged remaining issues.[5] On August 10, 1993, the Level I Hearing Officer found in favor of the District denying the petitioner's request for any relief related to the issues of reimbursement for prior hospital educational services; reimbursement for independent evaluations; and an alleged failure of the District to provide records.[6]

Plaintiffs then filed a Level II Appeal of the Level I Hearing Officer's decision but later withdrew the appeal pursuant to a December 17, 1993 agreement between the parties under which the District agreed to pay Rachel $1,666.66 for expenses incurred in pursuing educationally related services.[7] Plaintiffs then filed this action pursuant to Section 1415(e) of the IDEA seeking the attorneys' fees and costs that they incurred in connection with the IDEA proceedings.

## ANALYSIS

The IDEA sets forth a comprehensive scheme which requires states that receive federal funds for education of the disabled to provide such children with a "free appropriate public education." 20 U.S.C. § 1412(1). The Act requires that schools establish an IEP for each disabled child, review it annually with the child's parents or guardians, and revise it when appropriate. 20 U.S.C.

§ 1414(a)(5). The Act also provides for the right to challenge the appropriateness of the IEP in an administrative hearing, and provides for subsequent judicial review. 20 U.S.C. § 1415.

Pursuant to Section 1415(e) of the IDEA, a court may award reasonable attorneys' fees and related costs incurred in connection with any action or proceeding arising under the IDEA to a parent or guardian who is the prevailing party and who was substantially justified in rejecting any written offer of settlement. 20 U.S.C. § 1415(e)(4)(B). Additionally, if a court finds that the parent or guardian, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy the court shall reduce accordingly the amount of attorneys' fees awarded under the IDEA. 20 U.S.C. § 1415(f).

■ The term "prevailing party" connotes the same general meaning under the § 1415(e) of the IDEA and 42 U.S.C. § 1988, and courts interpreting both sections apply the same principles to determine a party's entitlement to attorneys' fees and costs. *See Hunger v. Leininger,* 15 F.3d 664, 670 (7th Cir.1994); *Combs v. School Bd. of Rockingham County,* 15 F.3d 357, 360 (4th Cir.1994). The Supreme Court recently examined the "prevailing party" standard in a § 1988 case stating that in order to be a "prevailing party," the "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Farrar v. Hobby,* — U.S. —, —, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). The Court went on to explain that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.*

The Seventh Circuit has also emphasized that to be a prevailing party it is insufficient

---

3. *Id.*

4. *Id.*

5. *Id.*

6. *Id.* at 2.

7. *See District's Motion for Summary Judgment,* Ex. H.

to show that but for the request for a hearing and the hearing itself, the District would not have provided the child with special educational services. *See Brown v. Griggsville Community Unit School Dist. No. 4,* 12 F.3d 681, 684 (7th Cir.1993). As the court stated in *Brown,* " 'but for' is not an adequate conception of cause ... and the question whether a party prevailed because of the legal proceeding rather than for some other reason is, at a minimum, a question about causality." *Id.* (citations omitted). "The qualification 'at a minimum' is a bow in the direction of *Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992), where in dictum the Supreme Court suggested that not only must the lawsuit be a catalyst of legal change favorable to the plaintiff, but the plaintiff must have obtained relief through a judgment or settlement." *Id.* "On this view, the fact that a lawsuit had stimulated legislative reform or induced the defendant to take 'voluntary' measures that gave the plaintiffs what they wanted without the benefit of a judgment or settlement would not justify awarding them attorneys' fees." *Id.*

■ In this case, although the undisputed facts show that the administrative hearing officer adopted the IEP for Rachel as described by the District at the hearing, and did not grant plaintiffs any requested relief, plaintiffs argue that the pressure of the administrative proceeding brought about relief that followed in the form of a completed and later revised IEP, and therefore plaintiffs qualify as a "prevailing party" entitled to attorneys' fees for instigating that relief. The court disagrees.

The undisputed facts clearly show that the administrative hearing resulted in no enforceable obligations on the part of the District. Any relief that plaintiffs may have received after the administrative hearing in the form of a completed and later revised IEP, was not caused by the hearing, but was instead part of the District's ongoing evaluation process of Rachel's educational needs, implementing steps which the District had already taken before the hearing.

At the time Rachel's guardian requested the hearing, the District had not yet made a determination of Rachel's educational needs because the District had not yet had an opportunity to evaluate all of Rachel's medical records or test Rachel due to her constantly changing medical condition and living situation. On January 6, 1993, before the administrative hearing was requested, Rachel's guardian agreed that the District's evaluation process of Rachel's educational needs would have to wait until Rachel was discharged from the Henry Horner Center. Yet on January 22, 1993, while Rachel was still at Henry Horner, the guardian requested a due process hearing.

Rachel ran away from Henry Horner on January 23, 1993. The District was first notified of this on January 27, 1993. On February 10, 1993, Rachel was admitted at Hartgrove Hospital. On February 15, 1993, the District was notified that Rachel had been found and had been admitted to Hartgrove Hospital where she required 4–6 weeks of treatment. On February 24, 1993, District personnel consisting of the Director of Special Services, the District Psychologist and the District Social Worker visited Rachel as part of the evaluation process. On March 5, 1993, Rachel's guardian along with her attorney and a representative from the District attended a staffing Hartgrove Psychiatric Hospital to make a determination of appropriate special education services to be provided to Rachel. The meeting included discussions regarding the need to properly identify Rachel's difficulties and to prepare an individualized educational program ("IEP") for Rachel. Rachel was identified as behavior disordered and attention deficit disordered pending review of records not provided at that time but in possession of Rachel's mother, with further periodic review and evaluations. In addition, the parties discussed placement of Rachel in the Allendale Residential Facility and Allendale was contacted.

On March 12, 1993, Allendale accepted Rachel and the District confirmed the placement. On March 19, 1993, Rachel was transferred to Allendale. On March 26, 1993, a staffing was held at Allendale to incorporate additional handwritten notes into the IEP developed on March 5, 1993. Both Rachel's mother and her Aunt Patricia chose not to

attend this meeting. The March 26, 1993 IEP was signed by all in attendance. The substance of the March 26 staffing was discussed with Patricia by telephone immediately after the staffing. A final conference was scheduled for April 6, 1993. This meeting was canceled by the family's attorney. The Level I due process hearing was held on April 7, 1993.

Based on the District's actions prior to the Level I hearing described above, the court concludes that the hearing did not cause the District to ultimately provide special education services to Rachel. The District would have completed the IEP and provided Rachel with appropriate educational services whether or not a due process hearing was held. Before the hearing the District already had a preliminary IEP in place. The hearing was then continued in progress by the Hearing Officer in order to adopt the preliminary IEP with few changes. After the hearing the District merely continued its ongoing evaluation process of Rachel's educational needs, which had not yet been completed at the time the hearing was commenced due to factors outside of the District's control.

 It appears to the court based on the undisputed facts that the District responded to plaintiffs' concerns about Rachel's educational needs in a timely manner. Rachel's guardian did not allow the District sufficient time to respond to Rachel's problems before she filed her request for an administrative hearing. While plaintiffs are free to resort to administrative action under the provisions of the IDEA, they cannot expect to recover fees and costs when their efforts contributed nothing to the final resolution of a problem which could have been achieved without resort to the administrative process. *See Combs*, 15 F.3d at 362.[8] *See also, Brown*, 12 F.3d at 685 (parents of student who challenged his placement in special school for disabled children were not prevailing parties, entitled to attorneys' fees under the IDEA, where school board's annual review of the child's status resulting in a decision not to transfer the student, would have taken place whether or not the parents had requested a due process hearing). Therefore, the court holds that plaintiffs are not prevailing parties entitled to an award of attorneys' fees under the IDEA.

*CONCLUSION*

For the reasons stated above, defendant's motion to strike is GRANTED, plaintiffs' motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED. Judgment is entered in favor of defendant. This case is DISMISSED IN ITS ENTIRETY.

---

8. In *Combs* the court stated under circumstances very similar to this case that allowing an award of fees and costs in a case where a party pursued administrative remedies before the school district had sufficient opportunity to remedy the situation "would encourage potential litigants and their attorneys to pursue legal claims prior to attempting a simpler resolution and would discourage the school from taking any action whatsoever, particularly any favorable change in a child's IEP, once an administrative proceeding or lawsuit was underway for fear that any action on its part would give rise to a claim by the plaintiff that he prevailed and that attorneys' fees are in order." 15 F.3d at 364. This court agrees with the Fourth Circuit's reasoning in *Combs*, and finds that it applies equally to the facts in this case.