**John and Margaret PETROVICH, Plaintiffs,**

v.

**CONSOLIDATED HIGH SCHOOL DISTRICT # 230, PALOS HILLS, ILLINOIS, Defendant.**

No. 96 C 0782.

United States District Court, N.D. Illinois, Eastern Division.

March 25, 1997.

Deborah W. Owens, Hinsdale, IL, for Plaintiffs.

James P. Bartley, Scott Francis Uhler, Michael J. Duggan, Klein, Thorpe & Jenkins, Ltd., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

COAR, District Judge.

This matter is before the court on the parties' cross motions for summary judgment on plaintiffs', John and Margaret Petrovich's, petition for attorneys' fees and costs pursuant to 20 U.S.C. § 1415 of the Individuals with Disabilities Education Act. For the reasons stated in this memorandum opinion, defendant's motion is granted and plaintiffs' motion is denied.

### Background

Plaintiffs John and Margaret Petrovich ("Petrovich"), on their own behalf and the behalf of their minor son, Anthony Petrovich, filed this action against Consolidated High School District # 230 ("defendant") to recover attorneys' fees and costs as a "prevailing party" pursuant to section 1415(e) of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(e). (Complaint ("Comp."), at 1). At all relevant times, plaintiffs were residents of the defendant school

district. (Plaintiffs' Local Rule 12(M) Statement of Undisputed Material Facts (" 12(M)") ¶ 1). Defendant is a public school district and body politic required to provide public education to all eligible students within its boundaries. (*Id.* ¶ 2).

When he entered the defendant school district in his freshman year of high school in the fall of 1991, Anthony was considered a regular education student. (Defendant's Local Rule 12(N) Statement of Undisputed Facts (" 12(N)") ¶¶ 1, 2). Prior to entering high school, Anthony received services for learning disabilities in another public school district. (12(M) ¶ 4). Anthony's special education records were not transferred to his new high school, and the defendant was not made aware of Anthony's prior learning disabled services or of any need for them to continue during his high school years. (Plaintiffs' Response to Defendant's 12(N) Statement of Additional Facts ("Pl. Resp. to 12(N) Addt'l Facts"), Jim Droy Dep., Ex. D, at 148–49).

In February 1995, during the second semester of his senior year, Anthony was expelled for one year for drug possession. (12(N) ¶ 3). At the time of his expulsion, Anthony had two classes to complete in order to graduate, an English class and a physical education class. (12(M) ¶ 6). On August 7, 1995, plaintiffs, through their attorney, sent a letter to defendant school district stating that they would "file a request for a special education hearing to secure proper transition services and evaluations, as well as I.D.O.R.S. [Illinois Department of Rehabilitative Services ('D.O.R.S.')] involvement," unless the school district would lend cooperation and assistance in this regard. (Plaintiffs' Reply to Defendant's Response to Motion for Summary Judgment ("Pl.Reply"), Ex. A, at 2). Plaintiffs' counsel stated that she would assume the district was not "amenable to a settlement" and proceed accordingly if the district did not respond favorably to plaintiffs' counsel by August 14, 1995. (*Id.*).

On August 18, 1995, defendant responded to plaintiffs' counsel by letter asking for clarification of the relief requested. (12(N), Ex. B, at 53–54). The letter was received by plaintiffs' counsel on August 21, 1995, three days after she filed a request for an administrative hearing. In the request for an administrative hearing, plaintiffs' counsel asked that the hearing officer make the following conclusions with respect to the defendant's conduct toward Anthony:

1. Improper termination from L.D. services upon entrance to High School based on inadequate evaluation; improper transition from L.D. services.

2. Failure to monitor and re-evaluate when grades/achievement continued to decline.

3. Failure to develop IEP and/or "504" plan to address L.D. and Attention Deficit related needs; failure to develop vocational high school transition plan, and invite Ill.D.O.R.

4. Improper discipline measure of expulsion for behavior related to disability.

(12(M), Addt'l Facts, ¶ 11). Although plaintiffs had filed a request for an administrative hearing, defendant conducted an evaluation of Anthony on October 10, 1995. (12(M) ¶ 9). The parties were scheduled to meet on October 12, 1995 to discuss the results of Anthony's evaluation with a D.O.R.S. representative. (*Id.* ¶ 10). However, the meeting was later canceled as a result of a disagreement between the parties regarding who would attend the meeting and whether plaintiffs would waive attorneys' fees pursuant to a proposed settlement agreement. (12(N) ¶ 10). The meeting was not rescheduled.

The administrative hearing requested by plaintiffs was convened on November 1, 1995. (12(M), Ex. A). During the opening statements at the administrative hearing, plaintiffs' counsel requested that defendant provide transition services for and then graduate Anthony. (Plaintiffs' Motion for Summary Judgment ("Pl.Mot.Summ.Judg."). Ex. H., at 29–30). On November 13, 1995, the hearing officer concluded as a matter of law that the school district had not committed any of the four statutory violations alleged by plaintiffs in their written request. (*Id.*) Moreover, the hearing officer held that the school district: (1) did not inappropriately terminate services; (2) was never responsible for

transition services; (3) was never responsible for developing a vocational plan; (4) was never obligated to develop an IEP; and, (5) did not improperly expel Anthony for his drug possession in January 1993. (*Id.*) However, the hearing officer did find, as a matter of fact, that Anthony qualified as having a learning disability in the areas of Reading Comprehension, Math, and Written Language. (12(N), Ex. A, pt. III, # 15). In addition, the hearing officer entered the following orders:

1. School district will set up and have a representative at a meeting with an adult D.O.R.S. counselor to help the student apply for D.O.R.S. services.

2. Once the student is under the D.O.R.S. programming, or has been turned down for D.O.R.S. services, or he requests that he graduates, or on the date of March 1, 1996, the district will officially graduate this student.

(*Id.*, pt. V).

### *Standards for Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Cox v. Acme Health Serv., Inc.*, 55 F.3d 1304, 1308 (7th Cir.1995). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant satisfies this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552–53; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

Local Rule 12(M)(3) for the Northern District of Illinois requires a party moving for summary judgment to submit a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." *Id.* Local Rule 12(N)(3), in turn, requires the non-movant to file "a concise response to the movant's statement that shall contain ... a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* If a non-movant fails to respond to the 12(M) statement, the material facts set forth in that statement are deemed admitted.[1] Alternatively, if a non-movant's response fails to comply with the precise requirements of Rule 12(N)(3), the material facts set forth in the 12(M) statement may also be deemed admitted. *See Valenti v. Qualex, Inc.*, 970 F.2d 363, 369 (7th Cir.1992) ("[A] Rule 12 responsive statement that is a flat denial, without reference to supporting materials, or with incorrect or improper references, and containing irrelevant additional facts, has no standing under Rule 12(N).*"); *Waldridge v. American*

---

1. Whether the local rules are strictly or leniently enforced is left to the trial court's discretion. *See Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992); *Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir.1990): *see also Midwest Im-* *ports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir.1995) (a district court judge's interpretation of the Local Rules is afforded "considerable weight").

*Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir. 1994) (where the court observed that it has "repeatedly upheld the strict enforcement of [Local District Rules 12(M) and 12(N) ], sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

In this case, both parties failed to comply with the Local Rules. Instead of clear admittals or denials with appropriate references to affidavits, parts of the record or other supporting materials, both parties improperly included blanket denials, irrelevant facts, inappropriate argument and opinions. (*See* 12(N) ¶¶ 2, 7, 8, 12, 14. Pl. Resp. to 12(N) Addt'l Facts ¶¶ 5, 6, 9, 10, 12, 13, 17, 22, 25). This breach of the Local Rules greatly compounded the Court's task in deciding the motions. Nonetheless, the Court has given the parties the benefit of the entire record before it, even where they did not cite to specified portions in their submissions.

### *Discussion*

In this case, although the hearing officer explicitly rejected plaintiffs' allegations that the school district had committed statutory violations in its treatment of Anthony, plaintiffs argue that they are a "prevailing party" entitled to attorneys' fees and costs pursuant to 20 U.S.C. § 1415(e)(4)(B). Specifically, plaintiffs argue that they are a "prevailing party" because Anthony was evaluated by defendant, considered by D.O.R.S. for transition services, and ultimately graduated—all of the relief sought by plaintiffs in their administrative hearing request. This court disagrees.

### I. "Prevailing Party" Under IDEA

#### A. Standards

The Individuals with Disabilities Act ("IDEA") provides children who are disabled within the meaning of the statute with an enforceable right to a "free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c); *Hunger v. Leininger,* 15 F.3d 664, 666 (7th

Cir.), *cert. denied,* 513 U.S. 839, 115 S.Ct. 123, 130 L.Ed.2d 67 (1994). IDEA also provides the right to challenge the appropriateness of any individualized education plan ("IEP") in an impartial due process hearing, complain with respect to any matter relating to the identification, evaluation, or educational placement of the child as well as a right to subsequent judicial review. 20 U.S.C. § 1415(b)(1)(E), (b)(2) & (e)(2). Pursuant to section 1415(e)(4)(B), a court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a youth who brings any action or proceeding under this subsection and are deemed a prevailing party within the meaning of the statute.

■ The term "prevailing party" connotes the same general meaning under section 1415(e)(4)(B) of IDEA as under 42 U.S.C. § 1988. *Patricia E. v. Board of Educ. of Comm'y High Sch. Dist.,* 894 F.Supp. 1161, 1164 (N.D.Ill.1995). In *Farrar v. Hobby,* a section 1988 case, the Supreme Court stated that to qualify as a prevailing party, a "plaintiff must obtain at least some relief on the merits of his claim." 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). The Court further held that the "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought ... or comparable relief through a consent decree or settlement...." *Id.* (citations omitted). A "plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* (citing *Texas St. Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782. 792–93, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) ("touchstone of the prevailing party inquiry" is whether the legal relationship of the parties has been materially altered)). The court further stated that " 'liability on the merits and responsibility for fees go hand in hand ...' " *Id.* at 109, 113 S.Ct. at 572 (quoting *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985)).

■ The Seventh Circuit has further defined "prevailing party," stating that it is insufficient "to show that but for the request

for a hearing and the hearing itself, the school district would not have provided the child with ... services." *Downers Grove Grade Sch. No. 58 Bd. of Educ. v. Steven L.,* 89 F.3d 464, 467 (7th Cir.1996). Rather, in order to be entitled to an award of fees and costs as a "prevailing party," there must be, at a minimum, a showing of causality. that is, "not only must the lawsuit be a catalyst of legal change favorable to the plaintiff, but the plaintiff must have obtained relief through a judgment or settlement." *Id.* Thus, the fact that a lawsuit stimulated "the defendant to take 'voluntary' measures that gave the plaintiffs what they wanted without the benefit of a judgment or settlement would not justify awarding them attorneys' fees." *Patricia E.,* 894 F.Supp. at 1165 (citing *Farrar,* 506 U.S. at 111, 113 S.Ct. at 573).

## B. Application

■ In this case, plaintiffs are not entitled to attorneys' fees as a matter of law because plaintiffs were not a prevailing party in their action against defendant. Moreover, even if plaintiffs could be found to be a "prevailing party," the Court declines to exercise its discretion to award plaintiffs any attorney's fees on the ground that the fees are not reasonable.

### 1. *Prevailing Party*

Plaintiffs contend that they are a "prevailing party" because they received all of their requested relief: (1) Anthony was evaluated by the defendant; (2) Anthony met with D.O.R.S. and received transition services; and, (3) Anthony was graduated. The material facts show, however, that there is no genuine issue and that plaintiffs are not a prevailing party as a matter of law.

In *Farrar v. Hobby,* the Supreme Court held that to be a prevailing party, a "plaintiff must obtain some relief on the merits of his claim." 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). The Court reaffirmed its earlier holding that a judgment constitutes relief "if, and only if, it affects the behavior of the defendant toward the plaintiff." *Id.* at 110, 113 S.Ct. at 572 (citing *Rhodes v. Stewart,* 488 U.S. 1, 4, 109 S.Ct. 202, 203, 102 L.Ed.2d 1 (1988) (per curiam)).

In *Farrar,* the petitioners were found to be prevailing parties, even though they won only nominal damages, because they established the defendant's liability on their underlying constitutional claim. *Id.* at 113, 113 S.Ct. at 574. The Court reasoned that damages in any amount, whether compensable or nominal, entitle the plaintiff to "prevailing party" status because they force the defendant to pay to the plaintiff an amount he otherwise would not pay. *Id.*

Unlike the petitioners in *Farrar,* the plaintiffs in this case did not succeed on the merits of their underlying claim. The hearing officer explicitly concluded in her report that the school district had not violated any Illinois statute, did not inappropriately terminate services, was never responsible for transitional services or for developing an IEP or vocational plan, and did not improperly expel Anthony. Thus, every legal finding requested by plaintiffs was expressly denied by the hearing officer.

Plaintiffs also did not succeed on the merits of their three remaining forms of requested relief: (1) an evaluation of Anthony; (2) meeting with D.O.R.S. and transition services: and (3) graduation for Anthony after transition services were put in place. First, plaintiffs did not succeed on the issue of having Anthony evaluated by the defendant because the evaluation did not occur as a result of any enforceable judgment or consent decree. Rather, defendant voluntarily evaluated Anthony for learning disability eligibility, as requested by plaintiffs, on October 2, 1995, three weeks before the November 1, 1995 due process hearing. (12(M), ¶ 9). Moreover, even assuming that plaintiffs could prove that their act of filing a request for an impartial due process hearing was a material contributing factor in bringing about the desired evaluation, "the fact that a lawsuit ha[s] ... induced the defendant to take 'voluntary' measures that gave the plaintiffs exactly what they wanted without the benefit of a judgment or settlement ... [does] not justify awarding them attorneys' fees." *Patricia E.,* 894 F.Supp. at 1165 (citing *Farrar v. Hobby,* 506 U.S. at 111, 113 S.Ct. at 573). Furthermore, in this case it was never established that there was a dis-

pute as to whether defendant would willingly evaluate Anthony.

Plaintiffs also did not prevail on the merits of their request that defendant be compelled to convene a D.O.R.S. eligibility meeting or to provide transition services. The administrative hearing officer ordered defendant to set up and have a representative at a meeting with an adult D.O.R.S. counselor to help Anthony apply for D.O.R.S. Services. The hearing officer never ordered the school district to provide transition services. In fact, the hearing officer concluded that defendant "was never responsible for transition services." In addition, although the hearing officer ordered the Defendant to set up a D.O.R.S. meeting, plaintiffs concede that the school district's participation in a D.O.R.S. meeting was never a prerequisite to plaintiffs setting up or receiving a meeting with D.O.R.S. on their own. (Plaintiffs' Response to Cross–Motion for Summary Judgment ¶ 18). This relief was already available to them and did not require defendant's involvement. Furthermore, the school district had no substantive role in the D.O.R.S. meeting.

Plaintiffs also did not prevail on their final request that Anthony be graduated after the evaluations were completed and his learning disability status declared. (Pl. Resp. to 12(N) Addt'l Facts, ¶ 25). Plaintiffs erroneously allege in their 12(M) statement of facts that the hearing officer "ordered the district to hold the meeting with D.O.R.S. to coordinate post high school services, and only thereafter, to graduate Anthony." (12(M), ¶ 13). In fact, the hearing officer's order stated that "the school district was to officially graduate Anthony once Anthony was under D.O.R.S. programming, *or* had been turned down for D.O.R.S. services. *or* requested to be graduated, *or* on the date of March 1, 1996." (12(N), Ex. A, at V) (emphasis added). The hearing officer did not order the school district to graduate Anthony only after coordinating the D.O.R.S. meeting. Thus, the specific relief requested by Plaintiffs was never received in any enforceable judgment or settlement nor in the hearing officer's order. In addition, plaintiffs did not prevail on the issue of graduation because the defendant had the duty to graduate Anthony regardless of the outcome of the administrative hearing. Further, defendant agreed to graduate Anthony before the administrative hearing was convened once defendant became aware that he had fulfilled all of his requirements. (12(N) Addt'l Facts, ¶ 25). Thus, plaintiffs did not prevail on the merits of their request regarding Anthony's graduation because the order did not alter the legal relationship of the parties.

Finally, plaintiffs are not a "prevailing party" within the meaning of IDEA because the benefits they received through their due process claim were incidental to the relief sought. In *Hunger v. Leininger,* the Seventh Circuit held that where benefits are received pursuant to a valid order but "their value is wiped out by the ultimate outcome of the case," the retained benefits do not entitle the plaintiff to an award of attorneys' fees. 15 F.3d 664, 670–71 (7th Cir.1994). In *Hunger,* the plaintiffs were denied their request for attorneys' fees even though their challenge of the appropriateness of an IEP resulted in a hearing officer ordering defendant to provide in-home counseling. *Id.* The court concluded that the plaintiffs were not entitled to recover their attorneys' fees because the receipt of the in-house counseling was incidental to their goal of having the IEP declared inappropriate—a goal the plaintiffs never achieved. *Id.* at 671. The court emphasized that the plaintiffs had failed on every other relief requested and had "mostly lost." *Id.* at 670.

Similarly, the plaintiffs in this case mostly lost. They failed in their request that the hearing officer find that the defendant had improperly denied Anthony learning disabled services, transitional services, an appropriate IEP, and a vocational plan. The hearing officer also denied plaintiffs' allegation that defendant improperly expelled Anthony. Plaintiffs further failed in their request that defendant graduate Anthony only after transition services were put in place for the reasons outlined above. Indeed, the benefits received by plaintiffs in this case were incidental to their goal that the hearing officer find that the school district had violated Anthony's rights and Illinois statutory provisions. While plaintiffs received an enforce-

able order requiring defendant to set up a D.O.R.S. meeting and to graduate Anthony once certain conditions were met, these benefits were "tactical victories in what turn[ed] out to be a losing war." *Hunger*, 15 F.3d at 670 (citing *Richardson v. Penfold*, 900 F.2d 116, 119 (7th Cir.1990)).

In light of the foregoing, this court finds that plaintiffs have failed to establish that they are a prevailing party entitled to attorneys' fees and grants summary judgment in the defendant's favor.

### 2. *Reasonableness of Attorneys' Fees*

■ Even if plaintiffs were found to be a prevailing party pursuant to IDEA, this court concludes that plaintiffs are still not entitled to their attorneys' fees because an award of fees would be unreasonable in light of the insignificant relief they received. In order to determine the reasonableness of any fee award, the "degree of success obtained" is "the most critical factor." *Farrar*, 506 U.S. at 114, 113 S.Ct. at 574 (citations omitted). In some circumstances "even a plaintiff who formally 'prevails' . . . should receive no attorneys' fees at all." *Id.* at 115, 113 S.Ct. at 575; *see also Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 907 (7th Cir.1996) (stating that where a plaintiff's success is only technical or de minimis, no fees are to be awarded even if the plaintiff received some of the benefits sought and is technically a "prevailing party") (citations omitted); *Hunger v. Leininger*, 15 F.3d at 670 ("tactical victories in what turns out to be a losing war . . . do not create a right to attorney's fees").

■ To determine whether a prevailing party is entitled to attorneys' fees, the court considers three factors: (1) the difference between the relief received and the benefits sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the

public purpose of the litigation.[2] *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 907 (7th Cir.1996). In this case, plaintiffs did receive two of the seven forms of relief they sought in their administrative hearing request: First, they received a D.O.R.S. meeting to discuss Anthony's eligibility for transitional services; and, second, the school district was ordered to graduate Anthony.[3] There has been no showing that this relief was unavailable without resort to the administrative hearing.

However, with respect to the second factor, the relief that plaintiffs did receive was not significant. In *Farrar v. Hobby*, the Supreme Court held that petitioners were not entitled to attorneys' fees under Section 1983 even though they were a prevailing party. 506 U.S. at 103, 113 S.Ct. at 566. The Court stated that while the significance of the victory does not affect whether a plaintiff is a prevailing party, the technical nature of benefits received does bear on the propriety of fees awarded. *Id.* at 114, 113 S.Ct. at 574. The court emphasized that fee awards are not intended to be windfalls to attorneys, and where recovery of fees is the purpose of the litigation, the district court must compare the relief sought with the relief awarded. *Id.* at 114–15, 113 S.Ct. at 575 (citations omitted). Accordingly, the Court concluded that because petitioners had sought $17 million in compensatory damages against defendant and only received one dollar, petitioners had achieved little more than having a district court conclude that their rights had been violated in some way. *Id.* at 114, 113 S.Ct. at 574. The Court found that the petitioners had failed to prove any actual, compensable injury and, thus, the only reasonable fee petitioners were entitled to was "no fee at all." *Id.* at 115, 113 S.Ct. at 575. Further, in *Monticello School District No. 25 v. George L.*, the Seventh Circuit denied plaintiffs' request for attorneys' fees even

---

**2.** While the Seventh Circuit has not explicitly adopted the three-part test articulated by Justice O'Connor in her concurring opinion in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Seventh Circuit found that the three-part test provided guidance in the IDEA context. *See Monticello Sch. Dist.* No. 25, 102 F.3d at 907.

**3.** The five forms of relief upon which plaintiffs did not prevail included the four allegations of statutory violations which the hearing officer denied and the request that Anthony be evaluated, which the defendant voluntarily conducted almost three weeks before the administrative hearing occurred.

though it found that the parents were prevailing parties because the plaintiffs' success was only technical. 102 F.3d at 908. The court reasoned that while the plaintiffs achieved a better program for their son in the school district with more personal attention to his specific needs, these successes were de minimis in light of the plaintiffs' broader assertion that a particular school was the least restrictive environment for their son, an assertion denied by the administrative hearing officer. *Id.*

Similarly, in this case the only role the defendant was required to fill with respect to the D.O.R.S. services was to set up a meeting and have a representative attend. The school district had no obligation to participate in the D.O.R.S. meeting or to provide transition services of any kind to Anthony. Additionally, while the hearing officer ordered the school district to graduate Anthony, it did not order the defendant to graduate Anthony only under the conditions requested by plaintiffs. Rather, the hearing officer gave the defendant four different conditions by which to graduate Anthony: (1) when he received D.O.R.S. services, or (2) when he was denied D.O.R.S. services, or (3) when Anthony requested to be graduated, or (4) on March 1, 1996.

Furthermore, graduation was not a significant legal issue upon which plaintiffs prevailed because the school district offered to grant this relief as a matter of course once it became aware Anthony had completed all of his requirements. In fact, the school district was willing to graduate Anthony as soon as it became aware of his eligibility, but it was plaintiffs who objected to such action by the defendant until after the administrative hearing was convened. (Pl. Resp. to 12(N) Addt'l Facts ¶ 25). Further, requiring defendant to set up and attend a meeting and to graduate Anthony is less significant of a benefit than that achieved by petitioners in *Farrar*. Indeed, in *Farrar*, the petitioners, who were denied recovery of any attorneys' fees by the Supreme Court, at least prevailed on the merits of their underlying claim that their constitutional rights had been denied. *See* 506 U.S. at 114, 113 S.Ct. at 573. By contrast, in this case plaintiffs did not succeed

on any of their claims of statutory violations. Moreover, even if plaintiffs could be found to have prevailed on the issue of a D.O.R.S. meeting or graduation, plaintiffs did not succeed on a significant issue because defendant's never objected to graduating Anthony and because defendant's involvement in a D.O.R.S. meeting was not necessary to plaintiffs' obtaining transition services.

Additionally, plaintiffs did not receive any relief equivalent to the relief obtained by the plaintiffs *in Monticello School District No. 25*. In *Monticello School District No. 25*, the Seventh Circuit denied attorneys' fees despite the hearing officer's order that the school district had to develop an IEP for the student and take other specific actions, including in-service training of all of the student's teachers on the effects of attention deficit disorder in general and of the student's attention deficit disorder needs in particular. 102 F.3d at 900. By contrast, the school district in this case has no obligation to provide Anthony with any IEP, services, training or otherwise. As a result, the Court finds that plaintiffs did not prevail on a significant issue.

Finally, plaintiffs are not entitled to attorneys' fees because any success they achieved did not "accomplish[ ] some public goal other than occupying the time and energy of counsel, court, and client." *Farrar*, 506 U.S. at 121–22, 113 S.Ct. at 578 (O'Connor, J., concurring). In this case, plaintiffs did not allow the school district sufficient time to respond to their request before filing for an impartial administrative hearing. "While plaintiffs are free to resort to administrative action under the provisions of IDEA, they cannot expect to recover fees and costs when their efforts contributed nothing to the final resolution of a problem which could have been achieved without resort to the administrative process." *Patricia E*, 894 F.Supp. at 1166; *see also Combs v. School Bd. of Rockingham County*, 15 F.3d 357, 364 (4th Cir.1994). Contrary to plaintiffs' counsel's argument that the "Plaintiff could have just filed the hearing request without first offering the District a chance to work the matter out amicably," (Plaintiffs' Response to Defendant's 12(M) ¶ 5), "before a lawsuit is commenced. a school district

should be put on notice of disagreements and given an opportunity to make a voluntary decision to change or alter" the services being given to the child. *Johnson v. Bismarck Public School Dist.*, 949 F.2d 1000, 1004 (8th Cir.1991). In this case, plaintiffs did not give defendant such an opportunity.

The undisputed facts show that the first time plaintiffs expressed their concerns and requests to defendant was in their August 7, 1995 letter written by their attorney. (Plaintiffs' Response to Defendant's 12(N) Statement of Additional Facts ¶ 9). From the very beginning, plaintiffs involved an attorney in the process in obtaining voluntary services for their son; they never requested that defendant evaluate Anthony prior to the August 7, 1995 attorney letter, and they never attempted to deal directly with defendant. Additionally, regardless of whether plaintiffs letter was clear to defendant, plaintiffs gave the school district only 5 business days to investigate the matter and respond "favorably" to their letter before pursuing administrative remedies. Although the school district wrote the plaintiffs' attorney on August 18, 1995, only 9 business days after plaintiffs' attorney drafted their initial letter, plaintiffs had already filed a request for an administrative hearing. Undoubtedly, plaintiffs did not give the school district sufficient time to respond to their requests before they pursued administrative remedies. Accordingly, it would be inappropriate for them to recover attorneys' fees.

Finally, pursuant to Section 1415(e)(4)(B), the award of attorneys' fees under IDEA is discretionary. In this case, the Court finds that several facts warrant a denial of plaintiffs' petition. Although Anthony was ultimately found to have a learning disability and may have benefitted from special education services throughout all of high school, defendant was not found to have committed any statutory violations in its treatment of Anthony. The undisputed material facts show that plaintiffs hired an attorney before ever attempting to deal with the school district on their own. Moreover, they allowed the school district less than one week to respond to their demands before filing a request for an administrative hearing. While

plaintiffs received a meeting with D.O.R.S. and Anthony received transition services as a result of the administrative hearing, plaintiffs did not give the school district sufficient opportunity to remedy the situation before seeking an administrative proceeding. To allow the award of attorneys' fees and costs "in a case where a party pursued administrative remedies before the school district had sufficient opportunity to remedy the situation 'would encourage potential litigants and their attorneys to pursue legal claims prior to attempting a simpler resolution and would discourage the school from taking any favorable change in a child's IEP, once an administrative proceeding or lawsuit was underway for fear that any action on its part would give rise to a claim by the plaintiff that he prevailed and that attorneys' fees are in order." ' *Id.* at n. 8 (citing *Combs*, 15 F.3d at 364 (4th Cir.1994)). Accordingly, even if plaintiffs could be found to be a "prevailing party" on the issue of D.O.R.S. services or graduation for Anthony. the Court declines to exercise its discretion to grant plaintiffs' petition for attorneys' fees and costs.

### *Conclusion*

WHEREFORE, for the foregoing reasons, defendant's motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.